15-14-51 Curtis Copeland v. Diane Tiseo, parole agent. Oral argument not to exceed 15 minutes per side. Mr. Erickson for the respondent's appellant. May it please the court, I am Timothy Erickson, assistant attorney general for the state of Michigan, here on behalf of the respondent appellants. And if I may, I would like to reserve three minutes of my time for rebuttal. John Adams, in the defense of the British soldiers involved in the Boston Massacre, said, facts are stubborn things. And under ADPA and Jackson, and the double deference mandated by those two things, facts are truly stubborn things. And here are the facts, those stubborn facts, that show Mr. Copeland is guilty of receiving and concealing that stolen black Impala. Number one, he drove 100 miles from Detroit to Charlotte, Michigan, in order to acquire, two, a wrecked Chevrolet Impala. He negotiated the entire deal himself, paid in cash, but then elected to have the sale memorialized in the name of his girlfriend, Ms. Hinton. Now that VIN, the donor VIN from the white Chevrolet Impala, appears on a stolen black Impala back in Detroit. Among, notably, other stolen cars, other stolen cars, again, with altered VINs. And these are in front of the residence at 3950 Joseph Campo. In the garage of that residence, there was a, yet another, stolen automobile. And the neighbor testified that Mr. Copeland began frequenting that residence two or three times a week, starting in 2009, and she ultimately concluded that he resided there. The police search of the interior of that residence confirmed that. There are official state documents with his name. There was a shopping list of cars that also contained his name, in addition to men's clothing and other items that are not inconsistent with him being the one who spent a considerable amount of time there or resided there. And then lastly, there was an overabundance of auto parts, as the police officer testified. Now here, this laundry list of facts needs to be looked at in total, collectively. But it's also important for any court reviewing the sufficiency of the evidence to look at the particular crime at play. And here, the receiving and concealing offense is a very broad offense, and it is meant to capture a lot of conduct, as explained by the Michigan Supreme Court and People v. Alley. And that is illustrated by the contested second element here, where there are five different ways, essentially, that an individual can violate the statute. Bought, received, concealed, possessed, or aided in the concealment of stolen property. And so, in light of that, we've got a very broad general offense and a laundry list of facts that point to Mr. Copeland as receiving and concealing the stolen property. An alternate way for this court to look at the facts in this case, as opposed to going chronologically as I just did, start at the end with the stolen black Impala, as Detective Dupulsis did in his testimony, and upon prompting from trial counsel and cross-examination, said, based on my investigation, starting with the stolen black Impala, going all the way back to Lee's auto body in Charlotte, Michigan, he concluded that it was Mr. Copeland. Now, distinct from the record, distinct from the findings of the Michigan Court of Appeals, which show sufficient evidence, the District Court's opinion, on the other hand, forsakes AEDPA, engages in a de novo review of the record, inserting inaccurate factual findings for the sound ones of the Michigan Court of Appeals. And at the outset, it's important to note here, in a couple occasions where the District Court said, hey, there's insufficient evidence, the District Court prefaced that finding by saying, where's the effect of that, without impermissibly stacking inferences. Now, this bar to stacking inferences is not found in clearly established federal law, and in fact, clearly established federal law from Coleman v. Johnson seems to allow using multiple inferences. And specifically in the state of Michigan, as People v. Hardeman explicitly held, it is permissible in sufficiency review to consider an inference made upon another inference in finding sufficient evidence. And as this court well knows, when we're applying a general constitutional standard, such as the one explained in Jackson, state courts are given broad leeway in applying that standard. And so here, the court's not saying that you've got to stack inference upon inference to find sufficient evidence, but even if it gets to that point, that analysis is entirely appropriate. Further, deficiencies in the District Court's opinion are apparent when comparing it to the Michigan Court of Appeals. First, the Michigan Court of Appeals made a big deal out of that sale at Lee's Auto Body, and the state believes rightfully so. Because through that sale orchestrated by Mr. Copeland, we learned a lot about his plan intent and his ultimate execution of the receiving and concealing offense. Whereas the District Court, though quoting the Michigan Court of Appeals, its analysis, its substantive analysis largely ignores that significant fact and significant transaction. Secondly, the Michigan Court of Appeals went to great lengths to identify all Mr. Copeland's connections to 3950 Joseph Campaugh. Now again, very distinct, the District Court made a specific finding saying that Mr. Copeland may have frequented that residence. And that finding is not supported by the record, nor is it supported by the Michigan Court of Appeals findings. We have the testimony of the neighbor who said he lived there. We have the men's clothing. We have the different documents bearing his name on the inside of that residence. And there's sufficient evidence on the record for the finding that the Michigan Court of Appeals may have essentially that he lived there. Now the District Court did not stop there and went beyond that to find that Ms. Hinton was the one who in fact lived there. And again, this is not supported by the record. She specifically told the police she didn't live there. There was no women's clothing there for her to wear. There were no toys for her young child to play with. Whereas there's all these other indicators of Mr. Copeland's residence. Now the final deficiency that the state will address today brings us back to the nature of this offense, the broad nature of this offense. And that is that the District Court, in its opinion, in reciting the elements of receiving and concealing, left off two of the five different ways to violate that second element. And in this case, that's very significant. Not the bought. There's no evidence the state will concede that Mr. Copeland bought the black Impala. But another one that was left off by the District Court is very important. And that is the aided and concealment. Here, by going to Lee's Auto Body, by purchasing a salvaged Chevrolet Impala, for the purpose of taking off the donor VIN to cover up the identity of the stolen black Impala, Mr. Copeland completed the offense by aiding in the concealment. He essentially acquired the means, the vessel, by which that stolen black Impala could be masked. How was this case originally tried on that theory, on the aiding theory? Your Honor, I would say that the best part to gauge what the theory was, was on the prosecutor's closing argument, which was very brief and not specific in what theory the prosecution was. Was the jury instructed on aiding? Yes, Your Honor. When the jury was given instructions by the trial court, it was given all five, including aid in the concealment. And the state believes that that is important, regardless of what the prosecutor argued. The prosecutor could have got up and argued, well, we think that he bought this, we think he bought it, here's the evidence, we think he bought it. The jury was instructed on all five. And in the Michigan Court of Appeals, in reviewing the sufficiency of the evidence, it's presumed to have considered the full breadth of the offense in finding sufficient evidence. Here, the record and the findings of the Michigan Court of Appeals show that Mr. Copeland received and concealed that stolen black Impala by using the donor VIN. The district court ignored the record. The district court did not give proper deference to the Michigan Court of Appeals opinion. And as John Adams said, the facts are stubborn things. And the stubborn facts in this case, mandated under the double deference of Edpa and Jackson, show there's sufficient evidence. And the state would ask that this court reverse the district court's grant of habeas relief. Okay, thank you. Good morning. Thank you. And may it please the court. George Hicks on behalf of Petitioner Appellee Curtis Copeland. During Mr. Copeland's criminal trial, the state presented strong evidence that Mr. Copeland was involved in the purchase of the white Impala. It presented weak evidence that Mr. Copeland lived at the residence at Joseph Kampow Avenue. But when it comes to the black Impala, the actual stolen property at issue, the state presented no evidence demonstrating that Mr. Copeland possessed the black Impala, which is the only theory the state has ever argued throughout this entire case until this stage. Can it be argued there was circumstantial evidence when the VIN number on that Impala came from the other Impala that your client did own? Well, I think that there is evidence that certainly that Mr. Copeland played a role in purchasing that white Impala. And there is evidence that Mr. Copeland, again, weak evidence, but circumstantial evidence that Mr. Copeland lived at that residence. But as far as the evidence that makes that link between the white Impala and this black Impala that was found out front, I think that the only way you create that link is by speculating. And as this court has said in numerous decisions, Brown v. Palmer, Newman v. Metrish, Joseph v. Coyle, which Judge Cole and Judge Clay joined, Parker v. Renico, which Judge Cole joined, speculation is not sufficient to support a claim on Jackson, even with ADPA deference. And again, I will compare the circumstantial evidence that puts Mr. Copeland in his residence, because there you've got some men's clothes, and you've got a neighbor that says, well, he came and went a couple times. That's circumstantial evidence that might support him being at the residence. But as far as getting you to the point where you can say, well, what is the evidence connecting him to the fact of possessing that black Impala that was on the street in front of the house? And more important, the element of knowledge, Mr. Copeland knowing that that black Impala was stolen. And the only way you get there is by this inference that the state has continued to make that Vinn just somehow ended up there, that it must have been him. I think that's the root of speculation. And I think that the way that the state really wants you to rely on speculation is by the fact that, first of all, in its reply brief, it barely discusses the evidence supporting the conviction. It comes at the end of its brief after 20 pages, and even then, the state's best argument is that the police officer thinks he did it, which I think just shows that we're talking about speculation here. There's substantial evidence that links Mr. Copeland to the purchase of the white Impala. And there's evidence that the Vinn number of the white Impala ended up on the black Impala. And there's evidence that the defendant, Ms. Hinton, had control over the white Impala. And so, you know, I gather that the argument is that it's too great a leap to assume that they also had something to do with the fact that the white Impala's Vinn number ended up on the black Impala, parked in front of the house. Well, that's correct. And I think it's also important to note that what the speculative leap is, is both that Mr. Copeland possessed the black Impala, which again, is the only theory on which the state has proceeded throughout this case. Well, he's not, that's not the only thing. I mean, there is the aiding portion of the statute. Well, two responses, if I may, Judge Gibbons. The first is that, actually three, again, the fact that the state has never used the aiding theory throughout this case, that's at trial, on direct review, on federal habeas before the district court, even in seeking a stay. It's always proceeded on a theory of constructive possession. What should we do if the government's method of producing its strongest argument is flawed, but the verdict, in fact, was supported by sufficient evidence under Jackson? Well, I guess I would take a little bit of issue with the premise of the argument. And, you know, putting the, that question takes the edpedeference out of it. I think it does. It's one of the primary complaints about the district court's ruling, that while it referred to edpedeference, didn't actually apply it. Well, I have a couple of responses to that. The first is that I think that it does take edpedeference out of the picture, because in addition to the state only proceeding on a constructive possession theory, that's all the state appellate court did, too. In its one-line conclusion, it said that we think that there is sufficient evidence that Mr. Copeland possessed the black impala. Go back to the aiding thing. Sure. If there's sufficient evidence, does it have to be on the theory that the government argued, or can it be on any violation that the statute covers, especially given the fact that, according to your adversary, the district court, I mean not the district court, the trial court, instructed on all the theories that would be possible? Well, first, I guess I would take a bit of issue with that representation, that the district court instructed on all theories, because the prosecution expressly disclaimed an aiding theory. It did not. Can you refer me to the exact page in the transcript where the state prosecutor disclaims proceeding on an aiding theory? If I may. I don't. Well. Sure. It's there. It is in our brief. We refer to the exact page. Then you don't need to use it. Okay. Yes. It is in our brief. We refer to the exact. There is an exchange in which the prosecution expressly disclaims an aiding theory. There was not an instruction on that point, which is what Michigan law applies. And, again, that is consistent with how the state has consistently presented this case and on which the state appellate court presented the case. Now, I would also point out that even if you were to proceed under this aiding and the concealment of, you still have to have aiding and concealment. And Michigan state law, which I have seen nothing in the state's brief to the contrary, talks about concealing as a continuous action that actually involves hiding something. And here we have a car that was on a public road. There's not even any evidence that actually puts Mr. Copeland with the car at the same time. There's no evidence with any fingerprints, no hair, no nothing. The state did argue that there was sufficient evidence to support the verdict, and part of the evidence is the switching of the VIN plate from between the two in Palace. And so, essentially, they did make that argument as circumstantial evidence. And then you've got the next-door neighbor said that the defendant had been coming and going from the house for two years, so the neighbor assumed that he lived there. So you do have additional evidence of that kind as well. Well, Judge Clay, to respond, the evidence about switching the VIN plate was rejected by the jury. The state did not prevail on that count. And I think that reflects the fact, the very clear fact, that they did not have any evidence that connected Mr. Copeland from these two situations, purchasing the white Impala and living at the house, to the actual black Impala in front. Now, it's not the defense's job to come up with a reason or an alibi or anything like that, but you could very much think about the idea of it. You mean he was not convicted of that offense? Is that what you're saying? Yes, that is correct. And I think that reflects the fact that the jury rejected this theory that has always been the state's theory, that because he was involved in the purchase of the white Impala and because he lived at the residence, then therefore he is the person who possessed this black Impala and he knew that it was stolen. Is it appropriate to use the jury verdict in the manner you suggest? I mean, juries do things for all kinds of reasons, and we can't look into their minds even if they seem to do something by verdict. Sure. And I think this goes back to the state's iteration and reiteration about the doubly deferential standard of review where we are. And I think the best response to that comes from the Supreme Court itself. In the Jackson case in particular, it makes three statements to this effect, the first being a jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt. That's at page 317. The next is at page 318. When such a conviction occurs in a state trial, it cannot constitutionally stand. The application of the beyond a reasonable doubt standard to the evidence is not irretrievably committed to jury discretion. And finally. I don't think that has any – I mean, with all due respect, I don't think you really understood my question. I mean, what you're arguing is that we may draw a factual inference about what happened from a jury verdict. And I don't think – I just don't think that's what one draws from jury verdicts. Well, I think if I understand your question, I'm not arguing that this court has to draw anything from the jury verdict. Okay, thank you. That's all I – No, no, no. I understood that. But I think that the jury verdict simply reflects that there was no evidence linking everything over here, the purchase of the white Impala. You believe the jury verdict to be consistent with your argument, not something independent from which you can find that your argument has merit. That is correct. Contrary to the state's contention, we are not making an inconsistent verdicts argument. But the only thing the jury verdict means is that he couldn't be convicted beyond a reasonable doubt. It doesn't mean that the jury would have rejected the evidence for all purposes and couldn't have considered it as pertinent to the factual scenario of his having had contact with the two Impalas. And if there were evidence that actually showed that Mr. Copeland possessed the black Impala, as that term is understood under Michigan state law, and that he knew about the black Impala being stolen, I think I would agree. But again, the state, throughout its briefing, particularly in its reply brief, after we set out all of the holes in this evidence, had absolutely no response to any of this. Instead, what they argued in their reply brief, and I think this is very telling, is that basically this court cannot rely on its own precedents in which it has found on AEDPA review a violation of Jackson. Including, in particular, the precedents in which this court has found that speculation is insufficient. And I think there's a very good reason why the state is arguing that you shouldn't look to your own precedents that hold that speculation is insufficient is because speculation is all they have to make this necessary connection. And as you have said in at least four cases, speculation is insufficient. And that's not this circuit's precedent. It goes back to Supreme Court cases from decades ago. This is a case, Galloway v. United States from 1943. The essential requirement is that mere speculation be not allowed to do duty for probative facts, even after making due allowance for all reasonably possible inferences. And if you go back even further, this is Bailey v. State of Alabama from 1911, talking about the element of criminal intent. Intent can rarely be proved by direct evidence, but must be ascertained by means of inferences from the facts and circumstances developed by the proof. In the absence, however, of evidence from which such inferences may be drawn, the jury are not justified in indulging in mere unsupported conjectures, speculations, or suspicions. So I think that the fact that the state is pushing you to ignore your own precedents, whether it's Brown v. Palmer or Newman v. Metras, Joseph v. Coyle, Parker v. Renico, in which this court has said speculation is insufficient. The state is pushing that, and it's not talking about the evidence, I think is a very clear indication that all the state has to go on to prove these two necessary elements is speculation. Another thing that the state continues to press on are these objections to what the district court did in its opinion, talking about the different elements, talking about how it looked at the facts. I think that there are a number of responses to this. Number one, this court's review is de novo, so you can draw your own conclusions based on the briefing, based on the evidence that the state put forward, and based on your own precedents. Number two, again, it presses on this idea that, well, there were five different ways that this crime could be proven. And again, as we have already discussed, that actually was not how the state ever proceeded in this case. It has only proceeded on a theory of constructive possession of the black impala. And nowhere in the state's briefing does it even try to explain how Mr. Copeland constructively possessed the black impala through any of the evidence. And there's good reason for that. The constructive possession in Michigan requires both proximity and control over. There's absolutely no evidence, even giving the state the reasonable doubt, even giving it every reasonable inference, that there was any control by Mr. Copeland over the black impala. Equally, there is absolutely no evidence, again, giving the state all reasonable inferences, that Mr. Copeland knew that the black impala was stolen. If there are no further questions. Apparently not. Thank you. Thank you, Mr. Hicks. First, if I may, direct the court's attention to our reply brief at the stamped document, page 27, footnote 10. Providing the page ID 463 is where the prosecutor disavowed the aiding and abetting theory. That occurred after closing for deliberation, and that was said outside the hearing of the jury. So if the prosecutor's going off on the cuff on saying, oh, this was never an aiding and abetting, it doesn't matter. It's not facts. It was after the jury had already been instructed. It's after the jury had already heard argument. And so it's frankly irrelevant. And, you know, bringing this into Mr. Copeland's point about, you know, the state's only theory has ever been possession. The constitutional review under Jackson is not, did the state satisfy, prove everything that it said in argument, or the focus of its argument. That's not the standard. The standard is, is there sufficient evidence to convict? And here, the jury is instructed on all those five different ways, not just possession. And so it's not limited, and even so, the prosecutor at trial did not limit it to a possession. The Michigan court's emphasis on possession was in response to how Petitioner crafted his brief on appeal, focusing largely on the possession, which has been proven here. The government's not just hanging its hat on the aided and concealment. The possession's still very much in play. Under Michigan law, control can be accomplished through another person, and this comes from the Hill case that's cited by Petitioner in his brief, and possession can be joint. And so there can be possession through Ms. Hinton, if this court so finds. I won't address the inconsistent verdicts, as this court well knows, and it sounds like there's no real disagreement there about the inconsistent verdicts. But I will close with, this is a very unique case, and if I may, by way of analogy, to analogize it to the dissent in Davis, where the big issue was, as explained in the dissenting opinion from Judge Moore, there's all this evidence of after the crime, and so we can't find circumstantially that the crime was committed. Here, all our evidence is, or a lot of the evidence of intent is front-loaded in that sale at Lee's Auto Body, and that is merely confirmed by what the police found in front of Mr. Copeland's residence at 3950. And so even if this court were to go back and look at this through the lens of the Davis dissent, there's still sufficient evidence here because we have a ton more of the up-front intent showing that intention to follow through with a crime. Thank you. Okay. Thank you, Mr. Erickson and Mr. Hicks. We appreciate your arguments today. And Mr. Hicks, we certainly appreciate you taking this case under the Criminal Cases Act. The case will be submitted, and you may call the next hearing.